IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-00348-CNS-TPO

RAJAE BOUHMIDI,

      Plaintiff,

v.

CORRECTIONAL OFFICER JUSTIN TORRES, in his individual capacity,
EXECUTIVE DIRECTOR MOSES "ANDRE" STANCIL, in his individual capacity,
WARDEN RYAN LONG, in his individual capacity, and
ASSOCIATE WARDEN LUCILLE REAUX, in her individual capacity,

      Defendants.

---

## ORDER

---

Before the Court is CDOC Defendants' Motion to Dismiss the Complaint (ECF No. 1), filed by Defendants Moses Andre Stancil, Ryan Long, and Lucille Reaux (together, the CDOC Defendants), each of whom are sued in their individual capacity based on allegations arising from their supervisory roles as employees with the Colorado Department of Corrections (CDOC). ECF No. 33. For the following reasons, the CDOC Defendants' dismissal motion is GRANTED in part and DENIED in part.

1

## I.     BACKGROUND[1]

In 2022, Plaintiff Rajae Bouhamidi, was an inmate housed at Denver Women's Correctional Facility (DWCF) under the custody of the CDOC. ECF No. 1 ¶ 1. Plaintiff began working in the kitchen at DWCF at the end of 2022, where correctional officer Defendant Justin Torres was also assigned. *Id.* ¶¶ 10–11. Plaintiff alleges that, while working in the kitchen, Defendant Torres began verbally sexually harassing her by repeatedly complimenting Plaintiff's appearance and saying that he wanted to marry her. *Id.* ¶¶ 12–13. Plaintiff admits that she never reported the comments because she was afraid that Defendant Torres would retaliate against her, *id.* ¶ 14, but she alleges that other people, including other inmates and another correctional officer, noticed and commented on his behavior, *id.* ¶¶ 15–16.

Defendant Torres' inappropriate behavior toward Plaintiff escalated in February 2023 when he began ordering her to clean the DWCF staff restroom, which was secluded from other staff and inmates and not under video surveillance. *Id.* ¶¶ 19–20. Defendant Torres utilized his time alone with Plaintiff in the staff bathroom to intensify his sexual harassment, including by repeatedly groping her, pressing his body against her so that she could feel his aroused genitals, and, one occasion, vaginally penetrating Plaintiff with his fingers. *Id.* ¶¶ 25–29. Although Plaintiff repeatedly resisted Defendant Torres' advances and expressed her disinterest, *id.* ¶ 30, he continued ordering Plaintiff to clean the staff restroom and threatened to write-up her if she failed to comply, *id.* ¶¶ 21, 22.

---

[1] The background facts are taken from Plaintiff's Complaint and Jury Demand. ECF No. 1. For purposes of this motion, the Court accepts as true the well-pleaded allegations in the complaint and views them in the light most favorable to Plaintiff. *See, e.g.*, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Though Plaintiff initially felt she had no option but to oblige Defendant Torres' repeated requests that she clean the staff bathroom, *id.* ¶ 23, she eventually stopped reporting for work in the kitchen in order to "escape [his] unrelenting sexual abuse," *id.* ¶ 34. Shortly after Plaintiff stopped reporting for work, Defendant Torres was reassigned from his role in the kitchen, *id.* ¶ 36; however, he found ways to continue harassing Plaintiff even if they could not be alone, including by repeatedly touching Plaintiff when she got out of the shower or running his hands through her hair while conducting his rounds, *id.* ¶ 39. Plaintiff did not file a grievance about Defendant Torres' behavior while it was occurring between 2022 through 2023. *Id.* ¶¶ 35, 61.

In May 2023, Plaintiff was transferred from DWCF to another correctional facility. *Id.* ¶ 45. She was released from custody in October 2023, *id.* ¶ 47, after which time Defendant Torres contacted Plaintiff via Facebook Messenger and Facebook video call and continued harassing her, including by asking to see Plaintiff's breasts or genitals, *id.* ¶¶ 48-52.

In 2024, Plaintiff was again incarcerated at DWCF, *id.* ¶ 54, and "observed other female inmates receiving similar attention from Defendant Torres," including "flirting with other female inmates and taking posts to be near them." *Id.* ¶ 55. Plaintiff was also informed that "[a fellow inmate] and Defendant Torres had secret hand signals" that Defendant Torres would use to indicate that he wanted to have sexual intercourse or oral sex with that inmate. *Id.* ¶ 56. During this time, Defendant Torres "did not attempt to sexually assault" Plaintiff; however, he once attempted to use those same hand signals

with Plaintiff, who informed Defendant Torres that she knew what the hand signals meant and refused his request. *Id.* ¶¶ 55–59.

Following this encounter, Plaintiff was subsequently transferred to another correctional facility, and in September 2024, she filed a formal grievance against Defendant Torres. *Id.* ¶¶ 60, 61. In response to Plaintiff's grievance, the Department of Correction's Office of Inspector General (OIG) initiated an investigation into Defendant Torres' sexual abuse. *Id.* ¶¶ 62–64. At the time the complaint was filed, the OIG's investigation was ongoing, and Defendant Torres had been suspended from his duties at DWCF pending the outcome of the investigation. *Id.* ¶¶ 65–66.

The complaint contains no allegations that Defendants Stancil, Long, or Reaux (the CDOC Defendants) assaulted Plaintiff or that they had any actual specific knowledge of Defendant Torres' harassment or assault of Plaintiff. Rather, Plaintiff seeks to hold the CDOC Defendants liable in their supervisory capacities for their "actions and inactions [which] led to [Plaintiff's] repeated assault." *Id.* at 1, ¶ 1. Plaintiff alleges that the CDOC Defendants "knowingly, recklessly, and intentionally disregarded obvious serious risks to [Plaintiff] and other DWCF inmates posed by widespread and pervasive sexual abuse of inmates at DWCF" by "failing to take timely substantive remedial actions," "failing to properly hire, train, and/or supervise," "continuing to employ DWCF prison staff in positions that allow them unsupervised access to female inmates," and "failing to maintain a proper video surveillance system in all locations where inmates have contact with guards." *Id.* ¶ 77.

Plaintiff alleges that the CDOC Defendants' failures are particularly significant considering DWCF's well-known history of sexual assaults. *See generally* ECF No. 1 ¶¶ 68–78. For instance, in 2009, another DWCF inmate was awarded $1.3 million in a lawsuit against a different DWCF guard who coerced her into performing sexual acts and subsequently raped her. *Id.* ¶ 68. It was "well known to prison officials" that this same guard had a history of engaging in sexual misconduct with female inmates. *Id.* As part of the settlement that resulted from the 2009 lawsuit, the CDOC agreed to conduct supplemental annual training under the Prison Rape Elimination Act (PREA) focused on preventing CDOC employee-on-inmate sexual contact. *Id.* ¶ 70. The CDOC also agreed to uphold a "zero-tolerance" policy for employee-on-inmate sexual contact, mandating that CDOC employees report any information about such contact. *Id.*

Despite these reforms, in 2011 and 2012, DWCF was found to have the highest rate of alleged sexual assault or misconduct by correctional facility staff members against inmates in the country, with an estimated 10.7 percent of DWCF inmates claiming that they were victims of sexual assault or misconduct by staff members. *Id.* ¶ 71. And of all DWCF inmates subjected to sexual misconduct by staff, 7.3 percent reported that they had been physically coerced or threatened with physical force—a rate ten times higher than the national average. *Id.*

Plaintiff contends that this "pattern of known abuse continued" through 2022 when the CDOC settled a lawsuit brought by another former DWCF inmate who alleged that

she was sexually assaulted by a guard. *Id.* ¶ 73.[2] Despite these claims, that guard was not fired, but was instead "allowed to retire with full retirement benefits," which Plaintiff alleges "send[s] a message to all [C]DOC employees that [C]DOC does not punish those who commit sexual assault against DWCF inmates." *Id.* ¶ 74.

Plaintiff alleges that based on the report about the rate of sexual abuse at DWCF, as well as their "receipt of letters, grievances, kites, formal complaints, and civil suits filed by DWCF inmates," *id.* ¶ 69, prison officials, including the CDOC Defendants, knew about the ongoing and pervasive sexual misconduct and abuse at DWCF. *Id.* ¶ 72. Plaintiff also alleges that although the CDOC Defendants "are responsible for training DWCF employees to ensure they perform their duties consistent with the law and to discipline their improper conduct," they failed to do so, which "communicated to [C]DOC employees, including Defendant Torres, that sexual assault against DWCF inmates is authorized." *Id.* ¶ 76; *see also id.* (alleging that the CDOC Defendants' "failure to discipline constitutes training which authorizes future similar unconstitutional conduct"). Taken together, Plaintiff alleges that "sexual assault against inmates is acceptable, consistent with policy, and is approved practice, causing such sexual assault to be likely or even inevitable in the future" at DWCF. *Id.* ¶ 75.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss,

---

[2] The specific allegations in that case, as well as the known history of sexual assault at DWCF, are further detailed in *Ullery v. Raemisch*, No. 18-cv-00839-STV, 2019 WL 529570, at *4 (D. Colo. Feb. 9, 2019).

a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim for relief that is plausible on its face. *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A claim is plausible if it allows a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, if a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In assessing a claim's plausibility, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 663. Nevertheless, Rule 12(b)(6) remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III.    ANALYSIS

Plaintiff brings three claims for relief against the CDOC Defendants under 42 U.S.C. § 1983 for alleged violations of her constitutional rights, including (1) an Eighth Amendment excessive force claim, *id.* ¶¶ 79-95; (2) a Fourteenth Amendment substantive due process claim for an invasion of Plaintiff's bodily integrity, *id.* ¶¶ 96-109; and (3) a Fourteenth Amendment equal protection claim for sexual harassment, *id.* ¶¶ 110-122. The CDOC Defendants move to dismiss Plaintiff's claims against them under Rule

12(b)(6),[3] arguing that (1) Plaintiff's second and third causes of action brought under the Fourteenth Amendment should be dismissed because claims arising from her alleged sexual assault are covered by the Eighth Amendment, and (2) the CDOC Defendants are entitled to qualified immunity because Plaintiff fails to state a claim against them. *See generally* ECF No. 33.

Considering the CDOC Defendants' arguments, ECF Nos. 33, 52, and Plaintiff's response in opposition, ECF No. 44, the motion is GRANTED in part and DENIED in part for the reasons explained in further detail below.

### A. Plaintiff's Fourteenth Amendment Claims

The CDOC Defendants first address Plaintiff's second and third claims brought under the Fourteenth Amendment for violations of Plaintiff's due process and equal protection rights, respectively, and argue that those claims are subsumed by the Eighth Amendment. ECF No. 33 at 4–6. Thus, CDOC Defendants argue, because claims two and three should be properly brought and assessed under the Eighth Amendment's deliberate indifference standard, Plaintiff's Fourteenth Amendment claims should be dismissed. *Id.* In response, Plaintiff contends that she may properly maintain both her substantive due process and equal protection Fourteenth Amendment claims. ECF No. 44 at 4–7.

Although the CDOC Defendants' motion does not individually address each constitutional right under which Plaintiff's Fourteenth Amendment claims arise, the Court

---

[3] Defendant Torres, who has already filed an answer in this matter, *see* ECF No. 32, does not join the CDOC Defendant's dismissal motion.

does so below. As explained, the Court finds that Plaintiff's claim for a violation of her substantive due process right to bodily autonomy is not "covered" by the Eighth Amendment and thus may proceed. However, under Tenth Circuit precedent, because Plaintiff's equal protection claim for sexual harassment is covered by the Eighth Amendment, it cannot.

       i.     *Claim Two: Invasion of Bodily Integrity as a Violation of Substantive Due Process*

The Court first considers Plaintiff's second claim based on the alleged violation of her substantive due process right to be free from an invasion of bodily integrity. The CDOC Defendants contend that Plaintiff fails to identify any case to support her argument that it is proper to bring a substantive due process claim based on sexual harassment incurred by an inmate at the hands of prison officials while incarcerated. ECF No. 52 at 2. As support, the CDOC Defendants point to *Ullery v. Raemisch*, No. 18-cv-00839-STV, 2019 WL 529570, at *11 n.8 (D. Colo. Feb. 9, 2019), *aff'd sub nom. Ullery v. Bradley*, 949 F.3d 1282 (10th Cir. 2020), and urge the Court to accept Magistrate Judge Scott Varholak's conclusion that "the Tenth Circuit has consistently evaluated the violation of a prisoner's right to 'bodily integrity' resulting from sexual assault under the Eighth Amendment." *Id.* (collecting cases). The CDOC Defendants further argue that the Court should not follow the opposite conclusion reached by Judge David Ebel in *Hall v. Zavaras*, No. 08-cv-00999-DME-MEH, 2008 WL 5044553, at *3 (D. Colo. Nov. 19, 2008), because there, "defendants 'offered no elaboration upon or support for their argument' that the Eighth Amendment standard alone should apply," ECF No. 52 at 4 (citing *Hall*, 2008 WL 5044553, at *2) (cleaned up), and here, the CDOC Defendants provide more robust

argument. ECF No. 52 at 4. Respectfully, the Court declines the CDOC Defendants'
invitation.

As noted in *Hall*, "both Supreme Court and Tenth Circuit caselaw explicitly
disavow" the proposition that "any § 1983 claim brought by a prisoner must be governed
solely by the Eighth Amendment." *Hall*, 2008 WL 5044553, at *2 (collecting cases). The
Court agrees that this proposition is indisputably clear. Indeed, as the Supreme Court has
explained, "not . . . all constitutional claims relating to physically abusive government
conduct must arise under either the Fourth or Eighth Amendments; rather, . . . *[only] if a
constitutional claim is covered by a specific constitutional provision*, . . . [then it] must be
analyzed under the standard appropriate to that specific provision." *Cnty. of Sacramento
v. Lewis*, 523 U.S. 833, 843 (1998) (citing *United States v. Lanier,* 520 U.S. 259, 272, n.7
(1997) (emphasis added)). Likewise, Supreme Court precedent is equally clear that
substantive due process protections "may be triggered when the State, by the affirmative
acts of its agents, subjects an involuntarily confined individual to deprivations of liberty
which are not among those generally authorized by his confinement." *DeShaney v.
Winnebago County Dep't of Soc. Svcs.,* 489 U.S. 189, 199–200 & n. 8 (1989).
Considering this precedent, Judge Ebel concluded that so long as a plaintiff inmate's
claims are "'covered by' substantive due process," they "may bring separate § 1983
claims under the Eighth Amendment and the Fourteenth Amendment." *Hall*, 2008 WL
5044553, at *3 (citing *Lewis,* 523 U.S. at 843–44).

For that reason, the CDOC Defendants' argument that the "Eighth Amendment,
and 'not the more generalized notion of substantive due process, must be the guide for

analyzing [Plaintiff's] claims," ECF No. 52 at 4 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (cleaned up), is without merit. Far from being a "generalized notion," the substantive due process right to bodily autonomy that Plaintiff asserts arises squarely from the Fourteenth Amendment. *See, e.g.*, *Becker v. Kroll*, 494 F.3d 904, 923 (10th Cir. 2007) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and **the right to bodily integrity**.") (citing *Albright v. Oliver,* 510 U.S. 266, 272 (1994) (emphasis added)); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 770–71 (10th Cir. 2008) (providing that "[t]he protections of substantive due process," give rise to "fundamental liberty interests," including "the right to bodily integrity" (citations omitted)). Accordingly, it is proper for the Court to assess "[t]he validity of [Plaintiff's] claim . . . by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard," *Graham*, 490 U.S. at 394, as even the CDOC Defendants themselves recognize, *see* ECF No. 33 at 4–5 (citing *Lewis*, 523 U.S. at 841).

Equally unavailing is CDOC Defendants' reliance on *Ullrey* to argue that Plaintiff "should [not] be permitted to proceed with both an Eighth Amendment claim *and* a substantive due process claim." ECF No. 52 at 4 (citing *Ullrey*, 2019 WL 529570, at *11 n.8). There is no prohibition precluding a plaintiff from asserting claims arising from a constitutional violation under more than one constitutional standard. *See, e.g.*, *Graham*, 490 U.S. at 394 (explaining that when "addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force" which "[i]n most instances, [] will be either the

11

Fourth Amendment[]. . . *or* the Eighth Amendment[] . . . which are the two primary sources of constitutional protection against physically abusive governmental conduct" (emphasis added)).

Thus, notwithstanding the fact that "a § 1983 claim for a violation of Fourteenth Amendment substantive due process rights" is permissible only "in the narrowest of circumstances," the Court harbors no such concerns that it is "expand[ing] the concept of substantive due process" in this instance given the long-standing recognition of the substantive due process right to bodily autonomy. *See, e.g.*, *Becker*, 494 F.3d at 922–23 (citing *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992)). Accordingly, because Plaintiff's second claim under the Fourteenth Amendment seeks to vindicate a violation of her substantive due process right to bodily autonomy, it is properly asserted. *See, e.g.*, *Hall*, 2008 WL 5044553, at *3.

ii.    *Claim Three: Sexual Harassment as a Violation of the Equal Protection Clause*

Plaintiff's her third claim, brought under the Fourteenth Amendment's equal protection clause based on allegations of sexual harassment, does not share the same fate. With respect to this claim, the CDOC Defendants' dismissal argument arises primarily from a Tenth Circuit decision, *Barney v. Pulsipher*, which provides that "[c]laims of sexual harassment and assault of inmates by prison guards are more properly analyzed under the Eighth Amendment" than under the equal protection clause of the Fourteenth Amendment. *See* ECF No. 33 at 5 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 n.15 (10th Cir. 1998)); ECF No. 52 at 5 (same). Specifically, the CDOC Defendants contend that *Barney*, as "precedent in this Circuit," categorically requires dismissing an

inmate's Fourteenth Amendment claim arising on their sexual assault by a prison employee. *Id.* Although the Court does not agree that the dicta in *Barney* is necessarily as binding precedent as CDOC Defendants would have it believe,[4] it agrees that Plaintiff's sexual harassment claim is properly covered by the Eighth Amendment in this case, and thus, her third claim for relief should be dismissed.

The Court reaches this conclusion after considering the Tenth Circuit's opinion in *Adkins v. Rodriguez*, which appears to demand such treatment. *See* 59 F.3d 1034, 1036 (10th Cir. 1995). In *Adkins*, a post-conviction female inmate brought claims against various prison supervisors after a deputy prison trainee verbally sexually harassed her. *Id.* In considering her claims, the Tenth Circuit stated that plaintiff's sexual harassment claim "remains *bounded by the Eighth Amendment*, the 'explicit textual source of constitutional protection' . . . in the prison context." *Id.* at 1037 (citing *Graham,* 490 U.S. at 395 (emphasis added)). Given that here, Plaintiff's equal protection claim arises from her sexual harassment allegations specifically, the Court finds that the Tenth Circuit's determination in *Adkins*, as well as its later statement in *Barney*, sufficiently analogous that it must reach the same conclusion.

Accordingly, Plaintiff's third claim brought under the Fourteenth Amendment's equal protection clause based on her alleged sexual harassment must instead be considered under the Eighth Amendment.

---

[4] Although the footnote in *Barney* suggests that it is proper to dismiss an inmate's sexual harassment claim brought under the Eighth Amendment, the case does not demand it. In fact, in *Barney*, the Tenth Circuit fully considered plaintiff's equal protection claim on the merits at summary judgment stage, *see Barney*, 143 F.3d at 1312–13, and dismissed it only after concluding that plaintiff failed to present "any evidence indicating that women serving two-day sentences . . . received treatment different from men serving similar lengths of time," *id.* at 1312.

### B. Qualified Immunity

The Court must next determine whether the CDOC Defendants are entitled to qualified immunity. *See* ECF No. 33 at 13–16. In support of their contention that qualified immunity applies, the CDOC Defendants advance two arguments: First, they contend that because Plaintiff fails to state any claims under Rule 12(b)(6), she has not established a violation of her statutory or constitutional rights. *Id.* at 15. Second, they argue that Plaintiff "cannot show that [the CDOC Defendants] violated any *clearly established* constitutional rights." *Id.* (citation omitted). The Court addresses each argument below and finds that although the CDOC Defendants are entitled to qualified immunity with respect to Plaintiff's Fourteenth Amendment claims, the same is not true for her Eighth Amendment claim.

1.    *Legal Standard*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Once a qualified immunity defense is raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (cleaned up)). While these prongs may be addressed in any order, *Pearson*, 555 U.S. at 242, if "Plaintiff fails to satisfy either . . . the court must grant the defendants qualified immunity," *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

2.      *Clearly Established Right*

The Court first considers whether Plaintiff's claims arise from an alleged violation of a clearly established statutory or constitutional right. As to Plaintiff's Eighth Amendment claim, the Court is satisfied that she has. *See, e.g., Ullery*, 2019 WL 529570, at *10 (determining that the "law was clearly established in 2010 that [a prison] administrator aware of one prior instance of sexual misconduct by jail staff, coupled with other violations of prison policies, could be held liable for subsequent sexual abuse by a prison guard" (citing *Poore v. Glanz*, 724 F. App'x 635, 640–43 (10th Cir. 2018)).

The CDOC Defendants' contention that qualified immunity bars Plaintiff's Eighth Amendment claim because she "does not offer any argument related to the 'clearly established' prong," ECF No. 52 at 10, is unpersuasive given that they failed to adequately raise that issue in their dismissal motion in the first instance. "[T]o trigger the plaintiff's two-part [qualified immunity] burden, a defendant must first adequately present the qualified-immunity defense." *Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025) (citation modified). To the extent the CDOC Defendants protest that they did argue that there is no clearly established right from which Plaintiff's Eighth Amendment claim arises, they did so only in passing.[5] But that is not enough. "[T]o adequately present the defense, the defendant must not only explicitly raise it . . . but must also plead the defense beyond a perfunctory assertion," *Berryman*, 143 F.4th at 1140 (citation modified), and Defendants fail to do that here. *See also, e.g., Est. of Ward by & through Stamp v. Pueblo Cnty.,*

---

[5] *See* ECF No. 33 at 15 (arguing that "[b]ecause [Plaintiff] fails to adequately allege that the Supervisory Defendants violated her constitutional rights, she necessarily cannot show that they violated any *clearly established* constitutional rights as required under the second prong of the analysis").

15

*Colorado*, No. 23–cv–00473–CNS–MDB, 2023 WL 4744928, at *9 (D. Colo. July 25, 2023) ("Defendants' mention of qualified immunity, without more, does not demonstrate their entitlement to it.").

However, the same cannot be said of Plaintiff's Fourteenth Amendment claims. As to those claims, the CDOC Defendants argue that "[Plaintiff] cannot overcome the . . . assertion of qualified immunity as to her Fourteenth Amendment claims because there are no authorities clearly establishing an inmate's substantive due process or equal protection rights to be free from sexual harassment or assault, *separate from* rights that arise under the Eighth Amendment." ECF No. 33 at 15 (citing *Ullery*, 2019 WL 529570, at *10–11). Unlike their cursory argument regarding whether Plaintiff's rights under the Eighth Amendment are clearly established, the CDOC Defendants' argument here contains citations to supporting authorities and is sufficient to lend itself to meaningful analysis. *See id.*

Despite this, Plaintiff offers no argument to rebut the CDOC Defendants' contention. ECF No. 44 at 15. Rather, her brief response to the CDOC Defendants' qualified immunity defense is aimed solely at her Eighth Amendment claim. *See id.* But "[w]hen faced with an invocation of the doctrine of qualified immunity, the burden is on the Plaintiff to demonstrate that a constitutional right was 'clearly established,' by citing to precedent from the United States Supreme Court, the 10th Circuit, or the weight of authority from other circuit courts recognizing that right in the particular circumstances presented." *Calderon v. Hand*, No. 12-cv-03344-MSK-BNB, 2014 WL 573344, at *4 (D. Colo. Feb. 13, 2014) (citing *Novitsky v. City of Aurora,* 491 F.3d 1244, 1255 (10th Cir.

16

2007)). Because Plaintiff fails to meet that burden with respect to her Fourteenth Amendment claims, qualified immunity applies, and those claims must be dismissed.[6] *See Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 530 (10th Cir. 1998) (qualified immunity is proper when plaintiff fails to cite any case law which demonstrates the violation of a clearly established constitutional right); *see also Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) ("Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry.") (quotation modified and citation omitted).

3.       *Violation of a Statutory or Constitutional Right: Eighth Amendment*

The Court considers the next prong in light of the CDOC Defendants' argument that Plaintiff failed to allege a violation of her Eighth Amendment rights under Rule 12(b)(6). *See* ECF No. 33 at 15.[7] The CDOC Defendants contend that based on this failure, "[they] are entitled to qualified immunity in their individual capacit[ies]." *Id.* at 3. As explained below, because the Court finds that Plaintiff has sufficiently alleged facts to establish the CDOC Defendants' personal involvement, causation, and culpability as to the alleged Eighth Amendment injury Plaintiff suffered while incarcerated at DWCF, she has sufficiently pleaded a claim against them, and qualified immunity does not apply.

---

[6] Although the Court has already found that Plaintiff failed to state a § 1983 claim under the Fourteenth Amendment for sexual harassment, it concludes that qualified immunity also applies to bar that claim based both on the same reasoning the Court articulated above and also because Plaintiff proffers no argument or case law to rebut the CDOC Defendants' contention or otherwise demonstrate that she has alleged a violation of a clearly established constitutional right.

[7] *See, e.g.*, *Wilson v. Pauls*, No. 20-cv-00609-PAB-SKC, 2023 WL 2574375, at *6 (D. Colo. Mar. 20, 2023) ("Plaintiff has satisfied the first prong of the qualified immunity defense by adequately alleging a violation of the Eighth Amendment.").

i.    *Legal Standard*

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including 'reasonable measures to guarantee the safety of the inmates.'" *Poore*, 724 F. App'x at 639 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted)). A failure to take reasonable measures may result in liability for supervisory defendants sued under § 1983. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1163–64 (10th Cir. 2011).

Supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010) (citing 42 U.S.C. § 1983) (cleaned up). But "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

At bottom, this means that "a plaintiff must 'show an affirmative link between a supervisor and the alleged constitutional injury.'" *Stepp v. Lockhart*, 168 F.4th 1286, 1300–01 (10th Cir. 2026) (citing *George v. Beaver Cnty.*, 32 F.4th 1246, 1255 (10th Cir. 2022)). Meeting this standard requires establishing that the "supervisor knew or should have known of the risk of harm but, despite such awareness, had some sort of personal involvement in allowing that harm to occur." *Barry v. Colorado Dep't of Corr.*, No. 24-cv-00110-RMR-TPO, 2025 WL 358479, at *7 (D. Colo. Jan. 31, 2025), *report and*

*recommendation adopted sub nom. Barry v. Colorado Dep't of Corr.*, No. 24-cv-00110-
RMR-TPO, 2025 WL 4481137 (D. Colo. Feb. 19, 2025).

However, "[p]ersonal involvement is not limited solely to situations where a
defendant violates a plaintiff's rights by physically placing hands on him." *Dodds*, 614 F.3d
at 1195 (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)); *see also* 42
U.S.C. § 1893 (providing that any official who "causes" a citizen to be deprived of her
constitutional rights can be held liable). "Instead, to establish supervisory liability, a
plaintiff must show that '(1) the defendant promulgated, created, implemented or
possessed responsibility for the continued operation of a policy that (2) caused the
complained of constitutional harm, and (3) acted with the state of mind required to
establish the alleged constitutional deprivation.'" *Brown*, 662 F.3d at 1164 (citing *Dodds,*
614 F.3d at 1199). A plaintiff may prove these elements and establish supervisory liability
by pleading the existence of a deficient policy or custom, *Burke v. Regalado*, 935 F.3d
960, 997 (10th Cir. 2019), or deficient supervision or training, *McCarty v. Gilchrist*, 646
F.3d 1281, 1288 (10th Cir. 2011), that resulted in a violation of the plaintiff's constitutional
rights.

        ii.       *Analysis*

As an initial matter, it is beyond dispute that Plaintiff's injury is sufficiently serious
to establish an Eighth Amendment claim against Defendant Torres. *See Hovater v.
Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n inmate has a constitutional right to
be secure in her bodily integrity and free from attack by prison guards."). The CDOC
Defendants do not appear to take issue with this, and instead argue that Plaintiff has

19

failed to allege facts sufficient to plausibly demonstrate any of the three elements of personal involvement, causation, and state of mind necessary for supervisory liability to attach. ECF No. 33 at 7. Below, the Court considers the sufficiency of Plaintiff's allegations as to each element.

***Personal Involvement.*** Turning first to personal involvement, the crux of the CDOC Defendants' argument is that by referring to them collectively throughout her pleadings, Plaintiff fails to establish "how each defendant in the group took individual action or failed to take action for which each defendant can be faulted." ECF No. 33 at 8 (citing *Robbins*, 519 F.3d at 1249-50). As a result, the CDOC Defendants argue that Plaintiff has failed to provide CDOC Defendants with fair notice. *Id.* In response, Plaintiff contends that even though the allegations against each CDOC Defendant are similar, they are sufficient to provide notice and establish that these prison officials were aware of the widespread sexual abuse at DWCF and, despite their supervisory authority, failed to take steps to stop it, thus creating the conditions that resulted in Plaintiff's alleged sexual assault. ECF No. 44 at 8–10.

For purposes of a § 1983 claim, a supervisor-defendant's personal involvement may be demonstrated through their "'personal participation, [] exercise of control or direction, or [] failure to supervise,'" *Poolaw v. Marcantel,* 565 F.3d 721, 732 (10th Cir. 2009) (quoting *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997)), or [their] "knowledge of the violation and acquiesce[nce]" of a policy, pursuant to which, plaintiff's constitutional rights were violated, *Jenkins v. Wood,* 81 F.3d 988, 995 (10th Cir. 1996). As noted above, this means that personal involvement is established at the pleading

stage by alleging that a "defendant-supervisor [] creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds*, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983) (cleaned up).

Here, Plaintiff has successfully pleaded the CDOC Defendants' personal involvement. The Court is not persuaded by the CDOC Defendants' argument that collectively pleading their knowledge of prior incidents of sexual assault at DWCF is fatal to Plaintiff's claim. In fact, in this instance, the Court finds that it is logical for Plaintiff to do so, *see, e.g.*, ECF No. 1 ¶¶ 69, 76, 77, 99, 100–105, 107, 119, 120, given that the "confinement conditions" relevant to Plaintiff's allegations "allegation[s] would be the same for each Defendant," *Mauchlin v. Davis*, No. 12-cv-01449-RM-BNB, 2014 WL 5069547, at *7 (D. Colo. Oct. 9, 2014). Moreover, Plaintiff has not only put forth collective allegations regarding each CDOC Defendants' personal involvement. Rather, she offers specific allegations regarding how each CDOC Defendant was "responsible for training DWCF employees to ensure they perform their duties consistent[ly]" and for disciplining any improper conduct. ECF No. 1 ¶ 76.

Specifically, Plaintiff alleges that Defendant Moses "Andre" Stancil, Executive Director of the CDOC, manages, supervises, and controls the correctional institutions operated by the State of Colorado, including DWCF, and that he is "responsible for developing policies and procedures with respect to the operation of DOC and its facilities like DWCF." ECF No. 1 ¶ 5. Next, Plaintiff alleges that Defendant Ryan Long, as Warden

21

of DWCF, "was responsible for overseeing all operations at DWCF, including establishing procedures for the operations of DWCF on a day-to-day basis, the hiring of prison staff, ensuring that all DWCF employees were properly trained, and establishing internal security procedures." *Id.* ¶ 6. Finally, Plaintiff alleges that Defendant Lucille Reaux, as Associate Warden of DWCF, was responsible for "overseeing operations and hiring, training, and supervision of all staff at DWCF." *Id.* ¶ 7. These allegations are sufficient to satisfy the Court that each CDOC Defendant had authority to "implement procedures and safeguards to protect Plaintiff and other inmates from sexual abuse by guards." *Ullery*, 2019 WL 529570, at *9.

Because Plaintiff has alleged that the CDOC Defendants had authority to create and manage the policies implemented at DWCF, she has sufficiently alleged the CDOC Defendants' personal involvement in policy making at DWCF. *See, e.g., Dodds*, 614 F.3d at 1207 (Prison "officials may be held individually liable for policies they promulgate, implement, or maintain that deprive persons of their federally protected rights.").

***Causation.*** Having determined that Plaintiff correctly identifies the CDOC Defendants as the DWCF officials responsible for policy making, implementation, and enforcement, the Court next considers whether Plaintiff has properly pleaded that the CDOC Defendants caused Plaintiff's alleged injury. As explained below, the Court finds that she has.

To establish causation against a supervisor defendant, "a plaintiff must show that the [supervisor's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [supervisor's] action and the deprivation of

22

federal rights." *Dodds*, 614 F.3d at 1202 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 397 (1997)).[8] The Tenth Circuit has held that "acts or deficiencies that result in a jail atmosphere in which discipline and supervision is entirely lacking, may be sufficiently related to a particular instance of assault that a jury is permitted to conclude that the conditions proximately caused the assault." *Tafoya v. Salazar*, 516 F.3d 912, 922 (10th Cir. 2008) (citation omitted).

The CDOC Defendants argue that Plaintiff has failed to establish causation because her allegations "amount to nothing more than a formulaic recitation of the elements of a cause of action, when what is required is *specific* allegations about specific shortcomings of supervision or training." ECF No. 33 at 10. That is not true. When read in a light most favorable to Plaintiff, the Court finds that Plaintiff's complaint contains sufficiently specific factual allegations to support an inference that despite their authority and DWCF's long history of sexual abuse, the CDOC Defendants failed to "implement procedures and safeguards to protect Plaintiff and other inmates from sexual abuse by guards." *Ullery*, 2019 WL 529570, at *9.

As an initial matter, the Court finds that, contrary to the CDOC Defendants' argument, Plaintiff *has* alleged the existence of a specific DWCF policy: she alleges that, at DWCF, "sexual assault against inmates [was] acceptable, consistent with policy, and [was] approved practice, causing sexual assault to be likely or even inevitable in the

---

[8] Although this discussion concerns the standard used to assess a claim for municipal liability (and not individual supervisory liability) under § 1983, the analysis is the same. *See, e.g.*, *Burke v. Regalado*, 935 F.3d 960, 999 (10th Cir. 2019) ("Supervisory liability here is therefore predicated on his maintaining a policy or custom that resulted in the underlying violation. The same policy-or-custom element is required for municipal liability.").

future." ECF No. 1 ¶ 75. That the complaint identifies no formal or written DWCF policy is not fatal to Plaintiff's claim. "A policy or custom may take the form of, among other things, 'a formal regulation or policy statement,' 'an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law,' or 'the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.'" *Jackson v. City of Lawton*, No. CIV-23-284-G, 2023 WL 10448537, at *4 n.5 (W.D. Okla. Dec. 29, 2023), *report and recommendation adopted*, No. CIV-23-284-G, 2024 WL 1184431 (W.D. Okla. Mar. 19, 2024) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).

Plaintiff's statement of DWCF policy is not conclusory because the complaint pleads examples of specific DWCF policies that "set in motion a series of events that [the CDOC Defendants] knew or reasonably should have known would cause others to deprive Plaintiff[] of [her] constitutional rights." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (citing *Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 2006)); *cf. Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Plaintiff alleges that the CDOC Defendants (i) failed to properly train staff in a manner that prevented or addressed the known, pervasive sexual abuse by prison staff at DWCF; (ii) failed to take timely substantive remedial actions to address the problem; (iii) employed DWCF staff in positions that permitted them unsupervised access to female

24

inmates; (iv) failed to install surveillance cameras in all areas where staff had access to female inmates; and (v) failed to discipline improper staff conduct. ECF No. 1 ¶¶ 76–77.

These allegations, taken together with her allegations regarding DWCF's well-documented history of inmates being sexually abused by prison guards, *id.* ¶¶ 68–74, are enough to support Plaintiff's claim that her injury was the result of a DWCF policy wherein "sexual assault against inmates [was] acceptable . . . [and was] approved practice," *id.* ¶ 75. *See, e.g.*, *Keith v. Koerner*, 707 F.3d 1185, 1189 (10th Cir. 2013);[9] *Tafoya*, 516 F.3d at 916, 919 (concluding that a sheriff's custom of failing to (i) enforce a "'no-contact policy' between male detention officers and female inmates" and (ii) fully eliminate "blind spots where assaults could, and did, take place," when coupled with knowledge "that having some cameras in the jail was not enough to deter assaults in unmonitored areas," was sufficient to establish that the sheriff caused plaintiff's harm); *Ullery*, 2019 WL 529570, at *9 (concluding that plaintiff's § 1983 claims survived a motion to dismiss where she pleaded that the prison officials "knew about the ongoing and pervasive sexual misconduct and abuse at DWCF" "through receipt of letters, grievances, formal complaints, and civil lawsuits" yet "failed to" take "measures to protect inmates").

---

[9] Indeed, the Court finds that the allegations Plaintiff raises here are similar to those put forth by the plaintiff inmate in *Keith v. Koerner*. In that case, the Tenth Circuit determined that the district court properly denied a motion to dismiss claims for supervisory liability where the plaintiff pleaded that (1) the then-warden was aware of the jail's extensive history of sexual misconduct; (2) there had been inconsistent disciplinary responses to previous complaints of sexual misconduct; (3) the decision by the jail's policymakers' not to address the "existence of structural policy problems . . . contributed to the unlawful sexual conduct," including by failing to address, e.g., the insufficient use of cameras to monitor inmates and staff; and (4) there were no training programs tailored to the facility's all-female population. *Keith*, 707 F.3d at 1189. Here, Plaintiff alleges similar facts. *See, e.g.*, ECF No. 1 ¶¶ 68–74 (discussing DWCF's extensive history of sexual misconduct), ¶¶ 20, 24, 77, 99 (discussing the lack of cameras where the inmates and staff interact, including where Plaintiff was assaulted), ¶¶ 73–74 (discussing DWCF's inconsistent disciplinary responses to prior incidents of sexual assault).

However, Plaintiff goes even further than that and pleads additional factual allegations to demonstrate that the harassment and assault to which she was subjected by Defendant Torres was the result of specific policy failures. For instance, Plaintiff pleads that Defendant Torres "repeatedly touched [her] back or butt when she got out of the shower or ran his hands through her hair as he was doing rounds in her unit." ECF No. 1 ¶ 39. Plaintiff also pleads that some of Defendant Torres' inappropriate behaviors towards her were observed not only by other inmates, but by another DWCF staff member, as well. *Id.* ¶ 16.[10] Additionally, Plaintiff alleges that far from being shocked by Defendant Torres' initial inappropriate behavior, she was actually "[a]ccustomed to similar comments from other DWCF staff." *Id.* ¶ 14. These allegations provide additional support to Plaintiff's contention that, at the very least, DWCF's supervision policy was inadequate. They also further bolster the Court's conclusion that Plaintiff has adequately pleaded that the CDOC Defendants, each of whom bears responsibility for the policies at DWCF, caused the creation, promulgation, or implementation "of a policy the enforcement . . . of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds*, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983) (cleaned up).

Accordingly, the Court is satisfied that Plaintiff has properly pleaded that the CDOC Defendants upheld a policy and custom that caused Plaintiff's alleged sexual abuse.[11]

---

[10] Plaintiff alleges that "Correctional Officer Harris, also stationed in the kitchen, made several observations to [Plaintiff] about Defendant Torres' behavior, including that Defendant Torres followed [Plaintiff] around, that it was obvious that Defendant Torres liked [Plaintiff], and that Defendant Torres always wanted to be close to [Plaintiff]."

[11] While the Court is satisfied with the sufficiency of Plaintiff's allegations regarding her failure to supervise theory, it is less certain about Plaintiff's failure to hire allegations. Though not specifically addressed in the CDOC Defendants' dismissal motion, upon review, the Court finds that the complaint contains no non-conclusory allegations about how the CDOC Defendants failed to properly hire prison personnel. *See, e.g.*,

***State of Mind.*** Last, the Court turns to the CDOC Defendants' argument that Plaintiff failed to plead that the CDOC Defendants' possessed the requisite state of mind. Specifically, they contend that Plaintiff "does not allege that the [CDOC] Defendants were actually aware of any inappropriate conduct by [Defendant] Torres toward female inmates prior to the alleged assaults or that they failed to investigate any allegations of abuse." ECF No. 33 at 11. The Court finds this argument is also without merit.

Establishing a § 1983 claim requires pleading that the supervisory defendants had a culpable "state of mind." *Dodds*, 614 F.3d at 1204 (citing *Serna v. Colorado Department of Corrections,* 455 F.3d 1146, 1151 (10th Cir.2006)) (quotation cleaned up). Because Plaintiff's claim is brought pursuant to the Eighth Amendment, her allegations must support an inference that the CDOC Defendants, as prison "'supervisor[s,] acted knowingly or with deliberate indifference that a constitutional violation would occur.'" *Id.* (quotation cleaned up). This requires pleading that the CDOC Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837.

Contrary to their dismissal argument, *see* ECF No. 33 at 11–12, the Court finds that Plaintiff has offered allegations sufficient to establish that the CDOC Defendants acted with deliberate indifference in response to the significant risk of sexual abuse at DWCF. She does so not only through her allegations regarding DWCF's long and well-documented history of the sexual abuse that inmates have suffered at the hands of prison

---

ECF No. 1 ¶ 77 (stating that the CDOC Defendants "disregarded obvious serious risks" at DWCF by, e.g., "failing to properly hire . . . prison personnel," but including no additional allegations to support this conclusion), ¶102 (referring to the CDOC Defendant's "inadequacy of appropriate hiring" without any additional facts).

employees, as discussed above, but also through her allegations that the CDOC Defendants specifically were personally aware of those same risks through their "receipt of letters, grievances, kites, formal complaints, and civil suits filed by DWCF inmates." ECF No. 1 ¶ 69. *See, e.g.*, *Ullery*, 2019 WL 529570, at *9–10 (concluding that plaintiff pleaded deliberate indifference where she alleged that prison officials "knew that inmates were being sexually assaulted by guards," including "through receipt of letters, grievances, formal complaints, and civil lawsuits" and "were in a position to take measures to protect inmates, yet they failed to do so").

The argument that Plaintiff "does not allege that the [CDOC] Defendants were actually aware of any inappropriate conduct by [Defendant] Torres toward female inmates prior to the alleged assaults," ECF No. 33 at 11, is of no consequence. An official's knowledge of a "substantial risk of harm" may be established "by circumstantial evidence or 'from the very fact that the risk was obvious.'" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (citing *Farmer*, 511 U.S. at 842). Such inferences are permissible where, as here, Plaintiff has alleged the existence of "underlying unconstitutional misconduct [that] was so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of it." *Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995) (cleaned up). It is likewise irrelevant for culpability purposes that Plaintiff has not pleaded facts to show that the CDOC Defendants knew about a specific risk to her or posed by Defendant Torres. Establishing a supervisory defendant's deliberate indifference does not require pleading "knowledge of a substantial risk to a particular inmate," *Tafoya*, 516 F.3d at 916, or by a specific prison employee, *see Farmer*, 511 U.S.

28

at 843 (Prison officials cannot "escape liability for deliberate indifference" by arguing that they "did not know that the complainant was especially likely to be assaulted *by the [prison employee] who eventually committed the assault*." (emphasis added)). The CDOC Defendants' overall "knowledge of a substantial risk of harm" is sufficient. *Id.* at 842.

Thus, the Court is satisfied that Plaintiff has sufficiently stated a claim against the CDOC Defendants for a violation of her constitutional rights under the Eighth Amendment.

## IV. CONCLUSION

Consistent with the foregoing, the Court hereby ORDERS that the CDOC Defendants' Motion to Dismiss the Complaint (ECF No. 1), ECF No. 33, is GRANTED in part and DENIED in part. Plaintiff's Eighth Amendment claim (Claim One) against the CDOC Defendants may proceed because it is properly pleaded and not barred by qualified immunity. However, Plaintiff's Fourteenth Amendment claims (Claims Two and Three) are dismissed without prejudice due to the CDOC Defendants' assertion of qualified immunity.

DATED this 31st day of March 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

29